IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SANDRA G.,                              )
                                        )
            Plaintiff,                  )
                                        )
    v.                                  )  1:23CV6
                                        )
MARTIN J. O'MALLEY,[1]                  )
Commissioner of Social Security,        )
                                        )
            Defendant.                  )

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Sandra G. ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Act. The Parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff protectively filed her application for SSI on June 10, 2020, alleging a disability onset date of January 2, 2011. (Tr. at 13, 166-73.)[2] Her application was denied initially (Tr. at

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #4].

78-90, 99-102) and upon reconsideration (Tr. at 91-98, 113-15). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 116-30.) On February 24, 2022, Plaintiff, along with her attorney, attended a telephonic hearing, at which both Plaintiff and a vocational expert testified. (Tr. at 13.) Following this hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 23), and on November 8, 2022, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation omitted). "If there is evidence to justify a refusal to direct a

verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 *et seq.*, provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 *et seq.*, provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her application date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 16.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> bi-polar disorder, depression, anxiety, schizoaffective disorder, personality disorder, and post-traumatic stress disorder (PTSD)[.]

(Tr. at 16.) The ALJ found at step three that none of the impairments identified at step two, individually or in combination, met or equaled a disability listing. (Tr. at 16-18.) He therefore assessed Plaintiff's RFC and determined that she could perform a full range of work at all exertional levels, but with the following, non-exertional limitations:

> [she can perform] no more than simple routine repetitive task[s], not performed in a fast paced production environment, involving only simple work related instructions and decisions and relatively few workplace changes. [Plaintiff is

5

> f]urther limited to occupations requiring no more than occasional interactions with co-workers and members of the general public. [She] will be able to maintain concentration persistence and pace for 2 hour increments.

(Tr. at 18.) Based on this determination and the testimony of a vocational expert, the ALJ determined at step four of the analysis that Plaintiff was unable to perform her past relevant work as a hair stylist. (Tr. at 22.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled under the Act. (Tr. at 22-23.)

Plaintiff now raises three challenges to the ALJ's decision. First, she contends that, at step five, the ALJ failed to resolve apparent conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"). Second, Plaintiff argues that in setting the RFC, the ALJ failed "to provide sufficient information to review the non-vocationally relevant phrase 'not performed in a fast paced production environment.'" (Pl.'s Br. [Doc. #7] at 1.) Third, she contends that the ALJ failed to properly account for Plaintiff's moderate limitations in interacting with others when assessing her RFC. The Court considers Plaintiff's RFC challenges first and then addresses the step five challenge.

A. Production Pace Limitations

Plaintiff's RFC challenges both rely on the Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) and its progeny. In Mascio, the Fourth Circuit explained that, where moderate limitations in concentration, persistence and pace are reflected at step three, the ALJ should address those limitations in assessing the RFC or should explain why the limitations do not affect the claimant's ability to work. The Fourth Circuit specifically held

6

that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Mascio, 780 F.3d at 638 (internal quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted). However, as previously noted in other cases in this District, the Fourth Circuit's decision in Mascio

> does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision.
>
> An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Tolbert v. Colvin, 1:15CV437, 2016 WL 6956629, at *8 (M.D.N.C. Nov. 28, 2016) (internal ellipses omitted) (finding that RFC limitations to "simple, routine, repetitive tasks with simple, short instructions, in a job that required making only simple, work-related decisions, involved few workplace changes, and required only frequent contact with supervisors, co-workers, or the public" sufficiently accounted for a plaintiff's moderate limitations in concentration,

7

persistence, and pace in light of the ALJ's explanation throughout the administrative decision) (quoting Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015)); see also Sizemore v. Berryhill, 878 F.3d 72, 80-81 (4th Cir. 2017) (rejecting the plaintiff's argument under Mascio where the ALJ relied on the opinion of the state agency psychologist that, notwithstanding moderate limitations in concentration, persistence, and pace, the plaintiff could sustain attention sufficiently to perform simple, routine, repetitive tasks with additional limitations); Shinaberry v. Saul, 952 F.3d 113, 121-22 (4th Cir. 2020) (same, and noting that Mascio "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC").

In the present case, Plaintiff argues that the ALJ's failure to define "work 'not performed in a fast paced production environment' is problematic" because the ambiguity of this phrase prevents the Court from determining whether the RFC adequately accounts for Plaintiff's moderate limitations in concentration, persistence, and pace, as identified at step three of the sequential analysis. (Pl.'s Br. at 16.) As Plaintiff correctly notes, in Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019), the Fourth Circuit found that an RFC limitation prohibiting work "requiring a production rate or demand pace" did not provide "enough information to understand what those terms mean." Accordingly, the Fourth Circuit in Thomas held that, "[w]ithout further explanation," it would not determine "whether the RFC finding—particularly the portion restricting Thomas to jobs that do not require a 'production rate' or 'demand pace'—properly account[ed] for Thomas's moderate limitations in concentration, persistence, and pace." Id. at 312 n.5; see also Perry v. Berryhill, 765 F. App'x

8

869 (4th Cir. 2019) (finding that the failure to define the term "non-production oriented work setting" precluded meaningful review).

Defendant, in turn, contends that the RFC in the present case provides the "further explanation" absent in Thomas, Perry, and their progeny. Specifically, Defendant argues that the limitations in the present case align with another Fourth Circuit decision, Sizemore, 878 F.3d at 80-81, in which the Court held that substantial evidence supported a limitation to "low stress non-production jobs with no public contact." In Perry, the Fourth Circuit noted that "the ALJ in Sizemore provided additional context, explaining that the claimant could perform work only in a 'low stress' setting, without any 'fast-paced work' or 'public contact,' to account for moderate limitations in concentration, persistence and pace. Those descriptors helped to explain the restriction intended by the ALJ, and allowed us to evaluate whether that restriction adequately accounted for the claimant's limitations." Perry, 765 F. App'x at 872, n.1 (internal citation omitted); see also Jones v. Saul, No. 8:18-2586-BHH, 2020 WL 1316532, at *5 (D.S.C. Mar. 20, 2020) ("[T]he ALJ adequately accounted for Plaintiff's moderate limitations in concentration, persistence, and pace by explaining how long and under what conditions Plaintiff could focus and maintain simple tasks, and by including restrictions related to Plaintiff's ability to change activities or work settings and work in proximity to others without distraction.").

Here, as in Sizemore, the ALJ's RFC finding more than adequately accounted for Plaintiff's moderate limitations in concentration, persistence, and pace, and included sufficient additional context to explain the restrictions intended by the ALJ. In addition to restricting Plaintiff to work "not performed in a fast paced production environment," the ALJ limited

9

Plaintiff to work involving (1) only simple, routine, repetitive tasks, (2) simple, work-related instructions, (3) simple, work-related decisions, (4) relatively few workplace changes, and (5) only occasional interaction with coworkers and the public. (Tr. at 18.) Most importantly, the ALJ also specifically found Plaintiff capable of maintaining concentration, persistence, and pace for 2-hour increments throughout the workday. (Tr. at 18.)

The ALJ also included further explanation for his reasoning. In analyzing Plaintiff's limitations in concentration, persistence, and pace, the ALJ specifically noted that

> The next functional area addresses [Plaintiff's] ability to concentrate, persist, or maintain pace. For this criterion, the claimant has moderate limitations. [Plaintiff] contended that she has limitations in maintaining a regular work schedule. On the other hand, [Plaintiff] said that she is also able to drive, prepare meals, play games, manage funds, use the internet, and handle her own medical care. Additionally, the record fails to show any mention of distractibility.

(Tr. at 17.) The ALJ also considered Plaintiff's testimony and reports that she was "unable to handle a lot of stress" and could not "pay attention for more than a short time, or handle changes in routines" but that she "could follow instructions and complete projects." (Tr. at 18, 20.)

The ALJ also considered the medical record indicating normal thought content and cognitive functioning, including mental examinations from her treating psychiatrist Dr. Vincent Izediuno, noting a "normal" mental status evaluation, including with respect to attention and concentration, orientation, registration and recall, memory, fund of knowledge, judgment and insight (Tr. at 19, 395, 397), and a mental status evaluation from her treating counselor Marc Lewis, a Licensed Clinical Social Worker ("LCSW"), finding "intact judgment, insight, memory, concentration, and attention" on exam (Tr. at 19-20, 403). In evaluating the

opinion evidence, the ALJ also noted Plaintiff's "own reports of the ability to take care of her personal needs; did not require reminders to take medication; was able to prepare complete meals on a daily basis, mow the lawn, go out alone, drive, shop, pay bills, play computer games, and socialize with others." (Tr. at 21.)

In addition, the ALJ considered a prior administrative determination by a different ALJ, which Plaintiff did not appeal, which found that Plaintiff could "maintain attention and concentration for two hours at a time and was able to perform simple, routine, repetitive tasks; sustain adequate attention and concentration for a regular workweek; adequately relate to others, but should avoid more than occasional interactions with the public and co-workers due to a reduced stress tolerance; and adequately adapt to changes in the workplace." (Tr. at 21, 69.) The ALJ agreed with that prior determination and found that Plaintiff's "current application continues to demonstrate mental impairments that limit but [do] not preclude her ability to perform work activities." (Tr. at 21-22.)

This discussion, the context given, and the additional limitations set out in the RFC all provide sufficient explanation for the RFC limitations related to concentration, persistence, and pace. To the extent Plaintiff singles out the restriction related to "fast paced production environment," that limitation is part of a larger description limiting Plaintiff to a position involving "no more than simple routine repetitive task[s], not performed in a fast paced production environment, involving only simple work related instructions and decisions and relatively few workplace changes" along with social limitations and a specific finding that she could "maintain concentration persistence and pace for 2 hour increments." (Tr. at 18.) See Sizemore, 878 F.3d at 80-81; see also Lamm v. Kijakazi, No. 5:22-CV-138-D, 2023 WL

11

6167151 (E.D.N.C Aug. 18, 2023) ("Here, the ALJ adds context through descriptors that are similar to those in Sizemore. For example, the ALJ limits Plaintiff to "no fast-paced production," in the context of a "in a low-stress setting.""); Gravel v. Kijakazi, No. 5:21-CV-178-KDB, 2022 WL 3008437, at *3 (W.D.N.C. July 28, 2022) ("[T]he use of the term 'non-production workplace setting' is not so indefinite in this context that the case must be remanded. The Court understands the phrase simply to refer to jobs which do not involve participating in the production of goods, such as on an assembly line.").[5]

Overall, the Court concludes that the RFC is understandable, the ALJ provided a detailed explanation and review of the record to support that RFC, and the multiple RFC restrictions address Plaintiff's limitations in concentration, persistence, and pace and do not require remand.

B. Interacting with Others

Plaintiff next argues under Mascio that the ALJ failed "to explain how the RFC accounted for [her] moderate limitations in interacting with others." (Pl.'s Br. at 18.) As with Plaintiff's persistence and pace limitations, at step three of the sequential analysis, the ALJ

---

[5] Further, the decision of the Western District of North Carolina in Gravel also posits "an independent reason to affirm the ALJ's decision on this point," explaining that none of the jobs the ALJ relied on at step five "involve a 'production' setting of any kind." Gravel, 2022 WL 3008437, at *3. Accordingly, the court concluded that "the 'production' limitation was in practical effect irrelevant to the ALJ's ultimate decision and thus would be harmless error if it was error at all." Id. (citing Shinseki v. Sanders, 556 U.S. 396, 407-10 (2009) (requiring the party attacking an administrative decision to prove that an error harmed her case)). The same holds true in the present case. At step five, the ALJ identified three jobs that Plaintiff remained capable of performing despite her impairments: (1) custodian, DOT 382.664-010, 1991 WL 673265, (2) cook helper, DOT 317.687-010, 1991 WL 672752, and (3) sandwich maker, DOT 317.664-010, 1991 WL 672749. (Tr. at 22-23.) Although Plaintiff attempts to argue that all of these positions conflict with the concentration, persistence, and pace limitations in this case, nothing in the DOT job descriptions corroborates this assertion or in any way suggests that the jobs in question involve "production" work. In the circumstances, the ALJ's formulation of the RFC related to concentration, persistence, and pace would not provide a basis for remand.

12

found that Plaintiff had moderate difficulty interacting with others. (Tr. at 17.) In making that determination, the ALJ explained as follows:

> [Plaintiff] alleged that she has difficulty engaging in social activities, getting along with others, and spending time in crowds. However, according to her statements, [she] is also able to get along with others, shop, spend time with friends and family, and live with others. Finally, the medical evidence shows that [Plaintiff] had a good rapport with providers, was described as pleasant and cooperative, had good interactions with non-medical staff, and appeared comfortable during appointments.

(Tr. at 17.) Later in his decision, when assessing Plaintiff's RFC, the ALJ determined that Plaintiff required a limitation to "occupations requiring no more than occasional interaction with co-workers and members or the general public." (Tr. at 18.)

Plaintiff contends that the RFC limitations included in this case fail to adequately address the "paragraph B" criteria identified at step three. In particular, she argues that "[t]he ALJ did not provide RFC restrictions for, or explain the absence of, limitations regarding the <u>qualitative</u> nature of social interactions [Plaintiff] could perform." (Pl.'s Br. at 20) (emphasis added) (citing Tr. at 17-23). Plaintiff asserts that,

> [o]n its face, the Paragraph B assessment looks at the qualitative ability of an employee to interact with co-workers, supervisors, and the public—not necessarily how long they can interact with them. Here, the RFC only limits [Plaintiff] to occasional interactions with co-workers and the general public, a temporal restriction—she cannot interact with co-workers and the public more than one-third of the day. Such a restriction does nothing to describe what types of interactions [Plaintiff] can have with individuals encountered in the workplace (i.e., must the interactions be non-confrontational, incidental, casual, not a core component of the job, or some other limitation?). Placing a temporal restriction on social interaction does little if anything to address the actual issue being assessed in the Paragraph B criteria—namely the qualitative ability of an employee to engage with others in the workplace.

(Pl.'s Br. at 20) (internal citation to the record omitted) (citing Tr. at 18).

Notably, Plaintiff points to no case law or regulatory guidance adopting this interpretation of the Paragraph B criteria. She also fails to explain how such an interpretation, if it existed, could be defined or encompassed by the DOT, companion publications, or vocational expert knowledge. In any event, the ALJ's decision adequately explained and addressed Plaintiff's social limitations, providing a logical explanation sufficient to allow for review and supported by substantial evidence in the record.

As set out above, Plaintiff alleged that she experiences anxiety in crowds and has difficulty engaging in social situations. However, she also acknowledged living with others and regularly visiting family, and the medical evidence reflected that Plaintiff interacted pleasantly and appropriately with her providers and office staff. (Tr. at 17-18.)

The ALJ further discussed Plaintiff's mental health treatment during the time period at issue. In particular, the ALJ considered the treatment notes of LCSW Marc Lewis, who treated Plaintiff on several occasions in 2021 and issued an opinion regarding Plaintiff's mental health limitations on February 16, 2022. (Tr. at 19-21, 399-423, 465-67, 469.) At a December 15, 2021 appointment,

> Mr. Lewis indicated [that Plaintiff's] global assessment functioning suggested a moderate degree of emotional distress and difficulty dealing with relationships; her overall level of mental and emotional functioning suggested mild difficulties with interacting appropriately with others and engaging and maintaining day-to-day functioning at work, school, or in the house and no difficulty taking care of her basic needs. Mr. Lewis further noted [that Plaintiff] had mild impairment in the ability to engage in social, family, and community functions and obligations and [Plaintiff's] emotional state appeared to be only mildly depressed and mildly anxious.

(Tr. at 20) (citing Tr. at 465-67). Nevertheless, when asked by Plaintiff's attorney to provide his opinion as to Plaintiff's ability to work on a full-time basis, Mr. Lewis responded, in

14

pertinent part, that Plaintiff would have significant difficult with maintaining consistent employment, and Mr. Lewis reported that Plaintiff's "most prominent impairments were based on interpersonal relationships and social interaction," although he conceded that "those impairments/symptoms were better managed with [Plaintiff's] medication compliance." (Tr. at 21) (citing Tr. at 469). The ALJ ultimately found Mr. Lewis' opinion "non-persuasive," noting that it was inconsistent with both the treatment notes chronicled above, which demonstrated only mild to moderate symptoms, and Plaintiff's own reports of her activities, including the abilities to go out alone, shop, and socialize with others. (Tr. at 21.) Notably, Plaintiff does not challenge the ALJ's analysis of Mr. Lewis' opinion.

The ALJ also considered the treatment record from Plaintiff's psychiatrist Dr. Vincent Izediuno, reflecting that Plaintiff was doing well on her medication and was "able to function at home and was able to deal with others and get restful sleep when taking this medication," with no reports of any "interpersonal relationship issues." (Tr. at 19.) These records from Dr. Izediuno reflect that Plaintiff's last hospitalization was over 10 years ago, that she was doing well on her medications, was in "good spirits," had good support from her husband, and was cooperative, with "[n]o interpersonal relational issues," "[n]o residual psychotic features," and "[n]o residual manic features." (Tr. at 393-95.) A later record from Dr. Izediuno similarly reflects that she was "doing well," and was "stable on her medication." (Tr. at 396-97.)

In addition, the ALJ considered the social limitations included in the prior administrative decision dated December 28, 2012. (Tr. at 21.) As discussed above, the ALJ found that "[t]he medical evidence associated with [Plaintiff's] current application continues

15

to demonstrate mental impairments that limit but [do] not preclude her ability to perform work activities." (Tr. at 21-22.) In particular, he noted that the prior administrative determination reflected that Plaintiff could "adequately relate to others, but should avoid more than occasional interactions with the public and co-workers due to a reduced stress tolerance." (Tr. at 21, 69.) The ALJ not only included these limitations in the RFC but also adequately explained his reasons for doing so, citing testimony, treatment records, medical opinions, and other relevant evidence.

Plaintiff nevertheless contends that, even if the ALJ sufficiently accounted for social interaction "as it related to the general public and co-workers, the ALJ provide[d] no limitations related to [Plaintiff's] ability to interact with supervisors, nor does he explain why such limitations are not necessary." (Pl.'s Br. at 21) (citing Dennis v. Berryhill, 362 F. Supp. 3d 303, 309 (W.D.N.C. 2019)). However, in Dennis, the ALJ erred when translating a general limitation in interacting with others, limiting the claimant to "occasional public contact," but placing no specific limitation on interactions with coworkers or supervisors. 362 F. Supp. 3d at 309. Here, in contrast, the ALJ specifically noted at step three and when assessing her RFC that Plaintiff had "a good rapport with providers," "had good interactions with non-medical staff," "was described as pleasant and cooperative," "was never fired from employment due to inability to get along with others," and "was able to get along with authority figures." (Tr. at 17, 20-21.) In fact, nothing in the record, including Plaintiff's testimony and Function Report, indicate that her social limitations extended to authority figures, such as supervisors, or that she had any significant difficulty interacting on a one-to-one basis. Rather, she testified that crowds and busy public spaces presented the biggest problems in terms of her anxiety,

which the ALJ specifically acknowledged. (See Tr. at 17-18, 43.) Accordingly, the Court finds no basis to disturb the ALJ's findings. To the extent Plaintiff further argues that the social requirements of the jobs identified at step five of the sequential analysis conflict with the RFC, the Court addresses this contention below in subsection C.

### C. DOT Conflict

In her final, related argument, Plaintiff challenges the ALJ's reliance on vocational expert testimony at step five of the sequential analysis. At step five, the ALJ identified three jobs that Plaintiff remained capable of performing despite her impairments: (1) custodian, DOT 382.664-010, 1991 WL 673265, (2) cook helper, DOT 317.687-010, 1991 WL 672752, and (3) sandwich maker, DOT 317.664-010, 1991 WL 672749. (Tr. at 22-23.) Plaintiff now contends that the DOT descriptions for all of these jobs conflict with the vocational expert's testimony that Plaintiff could perform them while limited to "no more than occasional interaction with co-workers and members of the general public." (Tr. at 18, 49-52.) However, a review of the DOT descriptions reveals no apparent conflict in this regard, as the DOT defines the level of social interaction for each of the jobs in question as "not significant," as further discussed below.

The DOT provisions for each position include two types of descriptions that bear on social aspects of the job: (1) an evaluation of whether interactions with people are "significant" or "not significant" aspects of the position, and (2) a number category that describes the type of interactions. The number categories are:

    0. Mentoring
    1. Negotiating
    2. Instructing
    3. Supervising

> 4. Diverting
> 5. Persuading
> 6. Speaking-signaling
> 7. Serving
> 8. Taking Instructions-Helping

Each position in the DOT includes one of these categories, represented in the "fifth digit" of the job description. The categories are "arranged in each instance from the relatively simple to the complex in such a manner that each successive relationship includes those that are simpler and excludes the more complex," so that, at least in a "general sense" the lower numbers are the most complex and the higher numbers are the most simple. DOT Appendix B, Explanation of Data, People, and Things, 1991 WL 688701; see also DOT Parts of the Occupational Definition, 1991 WL 645965 ("Worker Functions involving more complex responsibility and judgment are assigned lower numbers in these three lists while functions which are less complicated have higher numbers."). As relevant here, Category 6 Speaking-Signaling means "Talking with and/or signaling people to convey or exchange information. Includes giving assignments and/or directions to helpers or assistants," and Category 8 Taking Instructions-Helping is the most simple and means "Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to 'non-learning' helpers." DOT Appendix B Explanation of Data, People, and Things, 1991 WL 688701. Further, the DOT description for each position also describes whether the interaction with people is a "significant" or "not significant" part of the position. As explained by another court in this Circuit:

> Jobs that rank the interaction-with-others function as "not significant" adequately account for limitations on a claimant's ability to interact with the public, co-workers and supervisors. See, e.g., Praylow v. Colvin, 2016 WL 11200706, at *35-36 (D.S.C. Sept. 7, 2016) (holding that jobs requiring only

18

"taking instructions-helping" at a not-significant level accounted for the plaintiff's limitation to no interaction with the public); Wiles v. Colvin, 2015 WL 9684908, at *21-22 (D.S.C. Aug. 31, 2015) (finding that office helper job appropriately accounted for limitations on contact with co-workers and the public, because the DOT description listed interaction with people as "not significant") . . . ; Arsenault v. Astrue, 2009 WL 982225, at *3 (D. Me. Apr. 12, 2009) (holding that when a job requires "taking instructions-helping" at a not-significant level, the job accounts for individuals limited to only insignificant or occasional interaction with the public and/or co-workers and supervisors). Additionally, unskilled jobs . . . "ordinarily involve dealing primarily with objects, rather than with data or people," further accounting for the social interaction limitations in Plaintiff's RFC. SSR 85-15.

Kane v. Saul, No. 3:18cv746 (HEH), 2019 WL 7562760, at *15 (E.D. Va. Aug. 20, 2019) (concluding that "no apparent conflict existed that the ALJ did not adequately address"); see also Gill v. Berryhill, No. 3:17-cv-00430-FDW-DSC, 2018 WL 2107196, at *3 (W.D.N.C. May 7, 2018); Larsen v. Astrue, No. 1:10-CV-00936-JLT, 2011 WL 3359676 (E.D. Cal. Aug. 3, 2011) ("Jobs whose level of interaction is defined as 'not significant' in the DOT, have been held to be appropriate for workers with the RFC to have 'limited' or 'occasional' coworker contact.").

In the present case, the jobs of custodian and sandwich maker involve Category 6 interaction with people, while the position of cook helper is Category 8, representing the least complex interactions. In addition, the DOT specifically defines the level of interaction with people as "not significant" for all of these occupations. Thus, there does not appear to be any apparent conflict with regard to the social limitations included in the RFC. Moreover, even if the Court did find an apparent conflict with respect to the social interactions for the Category 6 jobs, the Category 8 position of cook helper remains, with 221,000 jobs nationally, as a representative occupation supporting the ALJ's conclusion. The DOT description for cook helper reflects that interaction with people is "not significant" and further provides that

"talking" is "not present" and "hearing" is present only "occasionally." DOT 317.687-010, 1991 WL 672752 (capitalization omitted). Thus, there is no apparent conflict between the DOT descriptions for this position and the vocational expert's testimony related to the RFC limitation to "occupations requiring no more than occasional interaction with co-workers and members of the general public."[6]

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is AFFIRMED, that Plaintiff's Dispositive Brief [Doc. #7] is DENIED, that Defendant's Dispositive Brief [Doc. #8] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 14th day of March, 2024.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

[6] Plaintiff also contends that the position of custodian presents a second apparent conflict with the DOT. Specifically, this job, as defined by the DOT, involves a reasoning level of 3. Plaintiff correctly notes that an apparent conflict may exist between a job with a reasoning level of 3 and a limitation to simple and/or repetitive tasks, and that, in such situations, more explanation regarding the individual's ability to perform a level 3 job is required. (Pl.'s Br. at 10) (citing Shaw v. Saul, 1:18CV268, 2019 WL 3577550 (M.D.N.C. Aug. 6, 2019)). However, even if the Court did find that the ALJ erred on this basis, any error proves harmless. The only potential conflict identified by Plaintiff for the two remaining positions, namely sandwich maker and cook helper, involved social interaction, and this challenge fails for the reasons set out above, at least as to the cook helper. Accordingly, the ALJ identified at least one job available in significant numbers in the national economy, thereby meeting his burden at step five of the sequential analysis.